IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBERT CAMPO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-00905-CV-W-ODS |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

<u>ORDER AND OPINION (1) DENYING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS, AND
(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending are Plaintiff Robert Campo's Motion for Judgment on the Pleadings (Doc. #13), and Defendant United States Department of Justice's Motion for Summary Judgment (Doc. #24). For the following reasons, the Court denies Plaintiff's Motion for Judgment on the Pleadings and grants Defendant's Motion for Summary Judgment.

### I. BACKGROUND
#### A. <u>Campo's FOIA Request</u>

In February 2019, Plaintiff Robert Campo submitted a Freedom of Information Act ("FOIA") request to Defendant United States Department of Justice ("DOJ"). Doc. #24-1, at 2, 8.[1] His FOIA request referred to the following:

> [E]mails sent by Darin Powers on July 30, 2013 with the subject "WPS – next steps & actions" ("**Powers' emails**") that were included in three cases involving attorneys employed by the U.S. Department of Justice ("**DOJ**"): *Jordan v. U.S. Dep't of Labor*, (D.D.C. No. 1:16-cv-0868-RC) (and…appeal to the D.C. Circuit No. 18-5128); *Jordan v. U.S. Dep't of Justice*, (D.D.C. No. 17-cv-02702-RC); *Jordan v. U.S. Dep't of Labor*, (WDMO No. 5:18-cv-05129-ODS).

Doc. #24-1, at 2, 8 (emphasis in original). Campo asked DOJ to "promptly email…an electronic (PDF) copy of any record maintained by the DOJ that satisfies the following

---

[1] Page references are taken from the pagination ECF applies to filings, not the parties' pagination.

criteria: a copy of Powers' emails in any form that was transmitted to or from any DOJ employee by any person at any time in or after June 2016 along with any record establishing the date or manner of such transmission." *Id.* at 8.

On February 27, 2019, DOJ, through its component Executive Office for United States Attorneys (EOUSA), advised Campo that it had received his FOIA request. Doc. #24-1, at 2, 9. DOJ also informed Campo of the following:

> You have requested records concerning a third party (or third parties). Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§ 552a. These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

Doc. #24, at 2; Doc. #24-1, at 2-3, 9; Doc. #27, at 6. Campo appealed the decision. DOJ affirmed the original decision:

> To the extent that non-public responsive records exist, disclosure of such records concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(6), (7)(C). Further, it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by these exemptions. Because any non-public records responsive to your client's request would be categorically exempt from disclosure, EOUSA properly asserted these exemptions and was not required to conduct a search for the requested records.

Doc. #24, at 2; Doc. #24-1, at 3, 10-11; Doc. #27, at 6. DOJ has no record of receiving a third-party authorization from Campo. Doc. #24-1, at 3. Campo admits he "never provided DOJ with any third-party release or death certificates." Doc. #27, at 6.

### B. The Powers Email

Before addressing this lawsuit and the pending motions, the Court must provide background information about the Powers email and briefly discuss the administrative and judicial proceedings that have addressed the Powers email.

### (1) Maria Jordan's DBA Claim

In September 2012, Maria Jordan was injured while employed by DynCorp International, Inc. ("DynCorp") at the United States Consulate in Erbil, Iraq. Doc. #24, at 3; Doc. #27, at 8. Maria Jordan, represented by her husband, Jack Jordan (who is also Campo's counsel), filed a claim under the Defense Base Act ("DBA"), which provides coverage for injuries sustained by certain employees working on military bases and embassies outside the United States. Doc. #24, at 3-4; Doc. #27, at 8.

During discovery in the administrative proceeding, a dispute arose regarding the discoverability of the Powers email. Doc. #24, at 4; Doc. #27, at 8. DynCorp resisted production of the Powers email, arguing it was protected by the attorney-client privilege. *Id.* In October 2015, DynCorp submitted the Powers email to the administrative law judge ("ALJ") for an *in camera* inspection. Doc. #24, at 4; Doc. #27, at 8. In February 2016, the ALJ issued an order finding the Powers email was privileged.

> [DynCorp]'s management-level employees expressly sought legal advice from [DynCorp]'s in-house counsel, and the statements themselves were confidential between the employees and the attorney at the time they were made. These emails were received by the in-house counsel and a select group of upper-level employees, and there has been no evidence submitted to this Court that these communications were not kept confidential.

Doc. #24, at 4; Doc. #24-2, at 35 (internal citations omitted); Doc. #27, at 9; *see also* Doc. #1, ¶ 12. Maria Jordan unsuccessfully appealed the ALJ's and BRB's decisions, which culminated in her petition for certiorari with the Supreme Court being denied. Doc. #24, at 4-5; Doc. #27, at 7; *Jordan v. Dir., Office of Workers' Comp. Programs, Dep't of Labor*, 138 S. Ct. 1609 (Mem.) (2018).

### (2) Jack Jordan's District of Columbia Lawsuit

Beginning in June 2016, Jack Jordan,[2] Maria Jordan's husband and Campo's counsel, submitted FOIA requests to the United States Department of Labor ("DOL") and DOJ related to, among other things, the Powers email. *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 220-24 (D.D.C. 2017). In September 2016, Jordan,

---

[2] For the remainder of this Order, the Court refers to Jack Jordan as Jordan.

proceeding pro se, filed a FOIA lawsuit against DOL in the United States District Court for the District of Columbia ("D.C. District Court") seeking "to compel" the Powers email and other emails "with the subject line: 'WPS – next steps & actions,' which were sent by and to members of management of DynCorp International, Inc." *Id.* at 219-20; *Jordan*, No. 16-CV-1868 (D.D.C. Sept. 19, 2016) (Doc. #1, ¶ 1).

In the D.C lawsuit, DOL was represented by attorneys employed by DOJ. DOL sought summary judgment on Jordan's claims and submitted the Powers email to the D.C. District Court for in camera review. In August 2017, after conducting an in camera review, the D.C. District Court determined DOL "properly withheld the unredacted version of the Powers email under FOIA Exemption 4 based on its attorney-client privilege nature." 273 F. Supp. 3d at 227. The Honorable Rudolph Contreras stated:

> The DOL's justification – as set forth in the Smyth Declaration and *Vaughn* Index and confirmed by the Court's in camera review – is sufficiently detailed for the Court to conclude that FOIA Exemption 4 applies to the Powers email, because it contained privileged communications between an attorney and his client. The DOL describes the DynCorp emails in a detailed manner – though obviously in such a way that does not disclose the information it seeks to protect – and there is nothing in the record to question the presumption of good faith that the Court affords the DOL in its explanation. The DOL explains that the DynCorp emails concerned DynCorp's confidential information regarding a business contract and expressly sought DynCorp's attorney's input and review. Smyth Decl. ¶ 31; *Vaughn* Index. Additionally, the DOL reiterated that the DynCorp emails are "marked 'Subject to Attorney Client Privilege.'" Smyth Decl. ¶ 31; *Vaughn* Index. This description supports the inference that the DynCorp emails concern contractual information that DynCorp wishes to protect and that this contractual information was sent to in-house attorney Christopher Bellomy for his legal advice.

*Id.* at 232. "With respect to the Powers email, the [D.C. District] Court's in camera review confirms that the content of the information and the reason it was communicated satisfy the demands of attorney-client privilege." *Id.*[3]

---

[3] In November 2017, Jordan submitted two FOIA requests to DOJ. In December 2017, Jordan filed suit against DOJ in the D.C. District Court related to those requests. *Jordan v. Dep't of Justice*, No. 17-CV-2702-RC (D.D.C.) (Doc. #1). During the lawsuit against DOJ, Jordan asked the D.C. District Court to release, among other things, the non-confidential information in the Powers email. In denying Jordan's request, the D.C. District Court noted Jordan's motion "retread[ed] grounds already covered" in the first FOIA lawsuit, and the Court previously rejected Jordan's arguments. *Jordan,* No. 17-

Jordan appealed the D.C. District Court's decision to the United States Court of Appeals for the District of Columbia ("D.C. Court of Appeals"). In October 2018, the D.C. Court of Appeals affirmed the D.C. District Court's decision:

> The district court did not err in concluding that the Powers email is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4). Nor did the district court abuse its discretion in reviewing the emails in camera to determine the extent of § 552(b)(4)'s applicability. *See ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011); 5 U.S.C. § 552(a)(4)(B). Notwithstanding appellant's speculation to the contrary, there is no reason to doubt the district court's finding that an in camera review revealed the Powers email contains an explicit request for legal advice. Nor is there any evidence of judicial bias, despite appellant's accusations to the contrary. To the extent appellant seeks disclosure of the parts of the Powers email that read "attorney-client privilege" and seek an explicit request for legal advice, the district court did not err in declining to require disclosure of such disjointed words that have "minimal or no information content. *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977).

*Jordan v. U.S. Dep't of Labor*, No. 18-5128, 2018 WL 5819393, *1 (D.C. Cir. Oct. 19, 2018). Jordan's ensuing Motion to Clarify Order, Motion Regarding Publication, and Petition for Reconsideration by the Panel or by the Full Court were denied in January 2019. No. 18-5128 (D.C. Cir. Jan. 24, 2019). Jordan then sought reconsideration of the order denying his motions. His motions were denied, and the Clerk was "directed to accept no further pleadings from appellant in this closed case." No. 18-5128 (D.C. Cir. Apr. 15, 2019).

After the D.C. Court of Appeals affirmed the D.C. District Court's decision, Jordan asked the D.C. District Court to set aside its ruling, which was affirmed by the appellate court, and hold the Powers email was not protected by attorney-client privilege. In July 2019, the D.C. District Court denied Jordan's motion, stating, among other things:

> This case is over. Plaintiff may not file any further motions without first obtaining leave of court. Leave will not be granted based on the same

---

CV-2702-RC (D.D.C. Oct. 11, 2018) (Doc. #33). Jordan's subsequently filed motions – including his Motion for Reconsideration, Motion for Relief from Judgment, Motion for Release of Evidence, Motion to Reconsider, and Motion to Compel – were denied. *Id.* (Docs. #43-44, 50, 63-64). In April 2020, the D.C. District Court entered a Minute Order, denying another motion for reconsideration filed by Jordan and warning "any additional pleadings…concerning the Powers and Huber e-mails may be met with sanctions and/or a referral to the State bar of which Mr. Jordan is a member." *Id.* (Apr. 1, 2020).

> recycled arguments that Plaintiff has repeatedly raised and this Court has
> repeatedly found to be meritless. Moreover, raising such arguments again
> may be cause for an award of fees.

331 F.R.D. 444, 54 (D.D.C. 2019).

Jordan again appealed and filed several motions with the D.C. Court of Appeals. *Jordan v. U.S. Dep't of Labor*, No. 19-5201 (D.C. Cir.). In January 2020, the D.C. Court of Appeals denied Jordan's Motion to Require the D.C. District Court to Include Powers' Email in the Record, Motion for Ruling, and Motion for Summary Disposition. No. 19-5201, 2020 WL 283003, at *1 (D.C. Cir. Jan. 16, 2020). The D.C. Court of Appeals also affirmed the D.C. District Court's decision denying Jordan's motion to set aside. *Id.* Jordan then filed his Motion to Reconsider and Reverse all Rulings, Motion to Recall Mandate, and Petition for Rehearing En Banc, which were all denied by the D.C. Court of Appeals. No. 19-5201 (D.C. Cir. Feb. 18, 2020, and Mar. 18, 2020). Again, the D.C. Court of Appeals directed the Clerk "to accept no further submissions from appellant in this closed case." *Id.* (D.C. Cir. Mar. 18, 2020).

### *(3) Jordan's Sarbanes-Oxley Matters*

Also, in 2016, Jordan filed an action against DynCorp under the Sarbanes-Oxley Act of 2002. *Jordan v. DynCorp Int'l LLC*, 2016-SOX-00042 (Dep't of Labor). During this administrative proceeding, Jordan filed several motions asking ALJ Paul Almanza to find emails (including the Powers email) were not privileged, sanction respondents for making false statements about the emails, and direct DOL to produce the emails. In January 2018, ALJ Almanza sanctioned Jordan. *Jordan v. DynCorp Int'l LLC*, No. 2016-SOX-00042 (Dep't of Labor Jan. 15, 2018).

> The evidence overwhelmingly supports a finding that [Jordan] has
> again made statements without evidentiary support. A reasonable and
> competent attorney would know, and should know, that such statements
> were objectively without evidentiary support. The plain text of ALJ Merck's
> rulings speaks for itself. I have explained to Complainant, multiple times,
> the difference between stating that a ruling was incorrect and stating that
> the ruling was never made. E.g., May 15 Order at 51. Complainant's
> continued failure to grasp this simple concept is highly disconcerting.
>
> Moreover, Complainant appears to have engaged in sanctionable
> conduct for which he was already sanctioned. For him to have continued
> to engage in sanctionable conduct, even after being specifically

> recycled arguments that Plaintiff has repeatedly raised and this Court has
> repeatedly found to be meritless. Moreover, raising such arguments again
> may be cause for an award of fees.

331 F.R.D. 444, 54 (D.D.C. 2019).

Jordan again appealed and filed several motions with the D.C. Court of Appeals. *Jordan v. U.S. Dep't of Labor*, No. 19-5201 (D.C. Cir.). In January 2020, the D.C. Court of Appeals denied Jordan's Motion to Require the D.C. District Court to Include Powers' Email in the Record, Motion for Ruling, and Motion for Summary Disposition. No. 19-5201, 2020 WL 283003, at *1 (D.C. Cir. Jan. 16, 2020). The D.C. Court of Appeals also affirmed the D.C. District Court's decision denying Jordan's motion to set aside. *Id.* Jordan then filed his Motion to Reconsider and Reverse all Rulings, Motion to Recall Mandate, and Petition for Rehearing En Banc, which were all denied by the D.C. Court of Appeals. No. 19-5201 (D.C. Cir. Feb. 18, 2020, and Mar. 18, 2020). Again, the D.C. Court of Appeals directed the Clerk "to accept no further submissions from appellant in this closed case." *Id.* (D.C. Cir. Mar. 18, 2020).

### *(3) Jordan's Sarbanes-Oxley Matters*

Also, in 2016, Jordan filed an action against DynCorp under the Sarbanes-Oxley Act of 2002. *Jordan v. DynCorp Int'l LLC*, 2016-SOX-00042 (Dep't of Labor). During this administrative proceeding, Jordan filed several motions asking ALJ Paul Almanza to find emails (including the Powers email) were not privileged, sanction respondents for making false statements about the emails, and direct DOL to produce the emails. In January 2018, ALJ Almanza sanctioned Jordan. *Jordan v. DynCorp Int'l LLC*, No. 2016-SOX-00042 (Dep't of Labor Jan. 15, 2018).

> The evidence overwhelmingly supports a finding that [Jordan] has
> again made statements without evidentiary support. A reasonable and
> competent attorney would know, and should know, that such statements
> were objectively without evidentiary support. The plain text of ALJ Merck's
> rulings speaks for itself. I have explained to Complainant, multiple times,
> the difference between stating that a ruling was incorrect and stating that
> the ruling was never made. E.g., May 15 Order at 51. Complainant's
> continued failure to grasp this simple concept is highly disconcerting.
>
> Moreover, Complainant appears to have engaged in sanctionable
> conduct for which he was already sanctioned. For him to have continued
> to engage in sanctionable conduct, even after being specifically

sanctioned for doing so, suggests that the initial sanctions were insufficient.

*Id.* at 90-91. ALJ Almanza prohibited Jordan from filing additional motions for sanctions and directed Jordan to show cause why he should not be sanctioned. *Id.* at 92.

In February 2018, ALJ Almanza stated ALJ Merck, who presided over the DBA matter, issued rulings on "the privileged status of the Emails," and ALJ Almanza did "not have the authority to overturn, vacate, modify, or determine the veracity of another ALJ's ruling." *Jordan v. DynCorp Int'l*, No. 2016-SOX-00042 (Dep't of Labor Feb. 28, 2018). ALJ Almanza also sanctioned Jordan for making statements about ALJ Merck and ALJ Almanza that were "without evidentiary support." *Id.* at 82-84.

In the meantime, Jordan filed another action against DynCorp and others[4] under the Sarbanes-Oxley Act. *Jordan v. DynCorp Int'l LLC*, 2017-SOX-00055 (Dep't of Labor). In February 2018, ALJ William Barto dismissed Jordan's complaint. *Id.* (Feb. 18, 2018). In April 2018, ALJ Barto issued an order admonishing and sanctioning Jordan. *Id.* (Apr. 9, 2018). Jordan was "ADMONISHED against making legal contentions that are unwarranted by either existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, in violation of 29 C.F.R. § 18.35(b)(2)." *Id.* at 9 (emphasis in original). In addition, Jordan was directed to "PAY to Respondent [DynCorp] the sum of $1,000.00, as reasonable attorneys' fees…." *Id.* at 10.

### C. Jordan's FOIA Lawsuit in this Court

In August 2018, Jordan, proceeding pro se, filed a FOIA lawsuit in this Court. *Jordan v. Dep't of Labor*, No. 18-6129 (W.D. Mo.). Jordan's lawsuit pertained to two FOIA requests. FOIA Request F2018-850930 sought (1) letters from the OALJ to Jordan regarding his FOIA requests, (2) "[t]he letter from Chief ALJ Henley to [Jordan] dated May 15, 2017 regarding how to address ALJ misconduct through official channels," and (3) "[t]he letter from Chief ALJ Henley to [Jordan] dated February 2,

---

[4] Jordan also named as respondents: four attorneys who represented DynCorp in prior administrative proceedings, the law firms that employed the attorneys, and the judges who presided over the cases. *Jordan v. DynCorp Int'l LLC*, No. 2017-SOX-00055, at 1-2 (Dep't of Labor Feb. 15, 2018).

2018 refusing to meet with [Jordan] regarding ALJ misconduct." No. 18-6129 (Doc. #1, ¶ 2). FOIA Request F2018-858557 sought "emails sent by employees of DynCorp International LLC ("DI") on July 30 or 31, 2013 with the subject line: 'WPS – next steps & actions.'" *Id.* ¶ 4. These emails include the Powers email. *Id.*[5]

In December 2018, the Court granted DOL's motion to dismiss Jordan's claims arising from FOIA Request F2018-858557. *Id.* (Doc. #24, at 4-6); *Jordan v. U.S. Dep't of Labor*, No. 18-6129, 2018 WL 6591807 (W.D. Mo. Dec. 14, 2018). The Court found Jordan's lawsuit was "parallel or duplicative of the matter litigated in the D.C. District Court." *Id.* (Doc. #24, at 5). Because "the conservation of judicial resources, comprehensive disposition of litigation, and the progress of that action weigh in favor of this Court deferring to the D.C. District Court," the Court, deferring to D.C. lawsuit, dismissed Jordan's claims related to FOIA Request F2018-858557. *Id.* at 5-6. In April 2019, this Court granted DOL's summary judgment motion. No. 18-6129 (Doc. #55).

Jordan appealed to the United States Court of Appeals for the Eighth Circuit. *Jordan*, No. 18-6129 (Docs. #57, 76, 79). On February 21, 2020, the Eighth Circuit issued its decision, affirming this Court's decision to dismiss some claims as duplicative of another pending litigation and grant summary judgment on the remaining claims. *Jordan v. U.S. Dep't of Labor*, 794 F. App'x 557 (8th Cir. 2020). On May 5, 2020, the Eighth Circuit issued its mandate.

### D. Talley's Lawsuit

In June 2019, Ferissa Talley, represented by Jordan, filed a lawsuit against DOL in this Court seeking production of the Powers email. No. 19-493 (Doc. #1). The Court stayed Talley's lawsuit until the Eighth Circuit disposed of Jordan's appeal. Once the stay was lifted, the parties filed dispositive motions. The Court will not examine the specifies of Talley's lawsuit in this Order. Instead, the Court refers to its Order entered on July 13, 2020, wherein the Court denied Talley's Motions for Judgment on the Pleadings and granted DOL's Motion for Summary Judgment. No. 19-493 (Doc. #102).

---

[5] In May 2018, DOJ emailed the Powers email with all text redacted Jordan. Doc. #1, ¶ 8; Doc. #7, ¶ 8.

### E. Campo's Lawsuit

In November 2019, Campo, represented by Jordan, filed this lawsuit. Doc. #1. In Count I, Campo alleges DOJ "failed to 'make' each Requested Record and all reasonably segregable information therein 'promptly available' to [Campo] 'except' to the extent FOIA 'specifically stated' that the DOJ was authorized to fail to do so." Doc. #1, ¶ 37. In Count II, Campo contends DOJ "withheld Requested Records or segregable information therein even though no DOJ employee 'reasonably' foresaw that disclosure of each such record or information would harm any interest protected by a FOIA 'exemption' or 'disclosure is prohibited by law.'" Id. ¶ 39. In Count III, Campo asserts DOJ "failed to 'take reasonable steps necessary to segregate and release nonexempt information' in each Requested Record" and failed to release "any privilege notation and any non-commercial words in any express request for advice, input or review." Id. ¶¶ 41-42. In Count IV, Campo claims DOJ failed to search or make reasonable efforts to search for requested records in electronic format. Id. ¶ 44. Finally, in Count V, Campo alleges DOJ failed to include the "names and titles or positions of each person" who was responsible for the denial of his FOIA request. Id. ¶ 46. Campo asks the Court to order DOJ to "produce any copy of Powers' emails located in any EOUSA office in Washington, D.C., Kansas City, Missouri, or Brooklyn, New York without any redaction or modification thereto." Id.

In February 2020, the Court granted DOJ's motion to stay this litigation pending the Eighth Circuit's disposition of Jordan's appeal. Doc. #14. In addition to noting Campo specifically identified Jordan's lawsuit in his FOIA request, the Court found Campo's lawsuit – similar to Talley's and Jordan's lawsuits – sought the production of the same Powers email. Id. at 7-9. No. 18-6129 (Doc. #1, ¶ 4); No. 19-493 (Doc. #1, ¶ 2); No. 19-905 (Doc. #1, ¶ 5). Campo's allegations replicated many of the same assertions in the lawsuits filed by Talley and Jordan. Compare No. 18-6129 (Doc. #1, ¶¶ 4-7, 11, 22-31, 36, 39), with No. 19-493 (Doc. #1, ¶¶ 2-6, 8-10, 17, 20-22, 24), and No. 19-905 (Doc. #1, ¶¶ 5, 7-14, 16, 18-22, 24). And all three lawsuits attached the same redacted emails and a January 2018 brief filed with the DOL's Benefits Review Board that discusses the emails. No. 18-6129 (Doc. #1-2; Doc. #1-5); No. 19-493 (Doc. #1-1; Doc. #1-2); No. 19-905 (Doc. #1-1; Doc. #1-4).

After the Eighth Circuit issued its mandate in Jordan's appeal in early May 2020, the Court lifted the stay and directed the parties to file dispositive motions. Doc. #21. Now pending are Campo's Motion for Judgment on the Pleadings and DOJ's Motion for Summary Judgment. Docs. #13, 24.

## II. CAMPO'S MOTION FOR JUDGMENT ON THE PLEADINGS
### A. Legal Standard

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (citations omitted); Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Id.* (citations omitted). The Court reviews a motion for judgment on the pleadings under the same standard governing motions to dismiss for failure to state a claim. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claim for relief must be "'plausible on its face,'" meaning it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). Mere "'labels and conclusions,'" "'formulaic recitation[s] of the elements of a cause of action,'" and "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

### B. Discussion

Campo contends DOJ's purported admissions in its Answer entitle him to judgment on the pleadings. Doc. #13-1, at 8-15. He argues DOJ's "representation that every DOJ employee 'lacks sufficient information'…was a judicial admission of such fact" and DOJ has told "a story that is blatantly contracted by the record." *Id.* at 12, 22.

Campo also claims DOJ failed to comply with FOIA in that DOJ failed to identify an employee "at least partially responsible for the denial in the DOJ's July 2 letter," "never asserted *any* justification for withholding any Requested Record other than Powers' email," and "admitted that it failed to take any required step or make *any* of the… required determinations." *Id.* at 12-15. He also maintains "DOJ admitted that no DOJ employee even *possessed* a copy of Powers' email or any other information that would enable them to contend in good faith that any information in Powers' email *could* be protected by FOIA Exemptions 6 or 7(C)." *Id.* at 15.

As explained *supra*, judgment on the pleadings is only appropriate when no material issues of fact remain to be resolved. *Faibisch*, 304 F.3d at 803; *see also Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941) (holding "denials and allegations of the answer which are well pleaded must be taken as true."). Also, because DOJ is the nonmovant, the Court is required to accept DOJ's assertions as true and draw reasonable inferences in its favor. *Id.* This affords the nonmovant "the benefit of all possible favorable assumptions." 5C Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, Federal Practice and Procedure § 1368 (3d ed. 2020).

Campo's dispute with the veracity of DOJ's denials and assertions demonstrates material issues of fact are unresolved. In addition, when accepting DOJ's denials and assertions as true, the Court is unable to conclude whether DOJ properly or improperly withheld documents that Campo requested. Thus, the Court denies Campo's motion for judgment on the pleadings.

### III. DOJ'S MOTION FOR SUMMARY JUDGMENT
#### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). Inadmissible evidence may not be used to support or defeat a summary judgment motion. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).

### B. Discussion
#### (1) FOIA

FOIA "ensure[s] that government is conducted in the open" and "provide[s] wide-ranging public access to government documents." *Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993); *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985). "FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). The nine exemptions "are 'explicitly made exclusive,' and must be 'narrowly construed.'" *Id.* (quoting *FBI v. Abramson,* 456 U.S. 615, 630 (1982)).

This Court reviews an agency's FOIA decision *de novo*. 5 U.S.C. § 552(a)(4)(B) (2016). "[S]ummary judgment is available to a defendant agency where 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F. 3d 1204, 1209 (8th Cir. 2008) (quoting *Miller*, 779 F.2d at 1382). To discharge this burden, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's]

inspection requirements." *Miller*, 779 F.2d at 1382-83 (citation omitted); 5 U.S.C. § 552(a)(4)(B).

If an agency withholds a document, it carries its burden of proof by providing declarations or affidavits explaining why documents are subject to an exemption. *Mo. Coal. For Env't Found.*, 542 F.3d at 1210 (citing *Miller*, 779 F.2d at 1387). Agency affidavits and declarations receive "substantial weight," but "they must include more than 'barren assertions' that a document is exempt." *Madel v. U.S. Dep't of Justice*, 784 F.3d 448, 452 (8th Cir. 2015). "If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." *Quiñon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (citations omitted).

### *(2) Search for Records*

Campo argues DOJ, in violation of FOIA, never searched for the documents he requested. But Campo disregards that DOJ expressly informed him that the requested records presumptively fell within Exemption 7(C) in that the records pertained to a third party. Doc. #24-1, at 2-3, 9. To obtain the requested records, DOJ instructed Campo to provide an authorization executed by Jordan (whose records Campo sought), proof that Jordan had passed away, or "a clear demonstration that the public interest in disclosure outweighs" Jordan's "personal privacy interest" and "significant public benefit would result from the disclosure of the requested records." *Id.*

According to the Supreme Court, "[w]here the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Id.* "Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *Id.*

13

Campo provided nothing in response to DOJ's communication. Doc. #24-1, at 3, 5. Moreover, Campo's request was limited to investigative files. That is, Campo specifically requested documents maintained by DOJ that pertained to the transmission of the Powers email to or from any DOJ employee in relation to Jordan's three FOIA lawsuits. His FOIA request sought documents dating back to June 2016, which is when Jordan filed his first FOIA enforcement lawsuit involving the Powers email. In all three lawsuits identified in Campo's FOIA request, DOJ's involvement was limited to serving as DOL's counsel. In these particular circumstances, DOJ's decision not to perform a search for responsive documents unless and until it received a death certificate, privacy waiver, or showing that the public interest in disclosure outweighs the third party's privacy interest is lawful under Exemption 7(C). *See Graff v. F.B.I.*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011). In addition, the only records sought by Campo were protected by Exemptions 6 and 7(C), as explained below.

### (3)     *Exemptions 6 and 7(C)*

Campo's FOIA request asked DOJ to provide him with "any records maintained by the DOJ" that is "a copy of Powers' email in any form that was transmitted to or from any DOJ employee by any person at any time in or after June 2016 along with any record establishing the date or manner of such transmission." Doc. #24-1, at 8. In response to Campo's FOIA request, DOJ invoked Exemptions 6 and 7(C) and claimed the production of records would violate the Privacy Act, 5 U.S.C. § 552a(b). *Id.* at 3, 9.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information complied for law enforcement purposes, only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy…." § 552(b)(7)(C).

> Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects. First, whereas Exemption 6 requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption 7(C). This omission is the product of a 1974 amendment adopted in response to concerns expressed by the President. Second, whereas Exemption 6 refers to disclosures that

> "would constitute" an invasion of privacy, Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. This difference is also the product of a specific amendment. Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files.

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989). "Exemption 7 applies to records compiled for both civil and criminal law enforcement purposes." *Nishnic v. U.S. Dep't of Justice*, 671 F. Supp. 776, 798–99 (D.D.C. 1987)

According to DOJ's declaration, EOUSA invoked Exemption 7(C), in conjunction with Exemption 6, "to withhold any records pertaining to the third party named in the FOIA request, Mr. Jordan." Doc. #24-1, at 4, 9. EOUSA "determined that any records responsive to [Campo's] request would be contained in the investigative files pertaining to [Jordan]." *Id.* at 4. According to EOUSA, "investigatory files are the type of law enforcement records where the balance characteristically tips in one direction due to the strong privacy interest of the individual named in these records." *Id.* "In the absence of an overriding public interest in disclosure, consent from [Jordan] or proof of death, EOUSA denied access to the third-party law enforcement information requested by [Campo]…because disclosure of the requested information could reasonably be expected to constitute an unwarranted invasion of these individuals' privacy." *Id.* at 5, 9.

DOJ's declaration states EOUSA involved Exemption 6, in conjunction with Exemption 7(C), because Jordan "has strong privacy interests" in the information contained in his "investigatory law enforcement records," and Campo "failed to establish an overriding public interest in disclosure. *Id.* at 6, 9. As mentioned above, Campo did not provide an authorization executed by Jordan or proof that he was deceased. *Id.* at 6. Consequently, EOUSA determined the "third-party individual's privacy interests in the requested law enforcement information outweigh[ed] the non-existent public interest in disclosure." *Id.* EOUSA concluded "to release any requested information would constitute a clearly unwarranted invasion of privacy." *Id.* EOUSA's concerns about Jordan's privacy were communicated to Campo. *Id.* at 4-5, 9.

But Campo did not provide EOUSA with an authorization signed by Jordan. And Campo did not establish there was any public interest in disclosure that outweighed Jordan's strong privacy interests. Accordingly, the Court finds DOJ properly withheld the requested documents pursuant to Exemptions 6 and 7(C).

### (4)  Exemption 4[6]

Even if the requested records were not exempt from disclosure under Exemptions 6 and 7(C), DOJ maintains the requested records are exempt from disclosure under Exemption 4. Campo's FOIA request sought "any records maintained by the DOJ" that is "a copy of Powers' email in any form that was transmitted to or from any DOJ employee by any person at any time in or after June 2016 along with any record establishing the date or manner of such transmission." Doc. #24-1, at 8. As demonstrated in Talley's lawsuit (No. 19-493) and Jordan's previous lawsuit, the Powers email is exempt from disclosure pursuant to Exemption 4.

Exemption 4 prevents disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Information other than trade secrets falls within the second prong of the exemption if it is shown to be (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citation omitted); *Madel*, 784 F.3d at 452 (citations and internal quotations marks omitted).

### (a)  Commercial or Financial

"Information is 'commercial' under this exemption if, 'in and of itself,' it serves a 'commercial function' or is of a 'commercial nature.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (citations omitted). According to D.C. District Court, when examining the email in Jordan's lawsuit, the Powers email is an internal DynCorp communication that "bears directly upon the 'commercial fortunes' of DynCorp

---

[6] Contrary to Campo's argument, DOJ did not waive this FOIA exemption by not raising it during the administrative process. *See Young v. C.I.A.*, 972 F.2d 536, 538-39 (4th Cir. 1992).

as a company," and "this information addresses a business contract of the company." *Jordan*, 273 F. Supp. 3d at 230. The D.C. District Court found "the information in question is 'commercial' or 'financial' because it regards DynCorp's commercial interest in the administration and management of the WPS Program contract." *Id.* at 230-31.

### (b) Obtained from a Person

Under FOIA, a "person" is defined as "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). The D.C. District Court found the Powers email was obtained from a person. *Id.* at 231.

### (c) Privileged

Privileged information includes "information that falls within recognized constitutional, statutory, or common law privileges." *Gen. Elec. Co. v. Dep't of Air Force*, 648 F. Supp. 2d 95, 101 n.4 (D.D.C. 2009) (citing *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 267-68 n.50 (D.C. Cir. 1982)). The attorney-client privilege has been recognized under Exemption 4. *See Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 945 (10th Cir. 1990) (citations omitted). The attorney-client privilege "applies broadly to communications made by corporate employees to counsel to secure legal advice from counsel." *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*, 187 F.3d 988, 991 (8th Cir. 1999) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

In Jordan's D.C. lawsuit, the District Court determined the Powers email was privileged. Judge Contreras found the email concerned DynCorp's confidential information regarding a business contract and expressly sought DynCorp's attorney's input and review." *Jordan*, 273 F. Supp. 3d at 232. Additionally, the email was sent to an in-house attorney and was marked "Subject to Attorney Client Privilege." *Id.* (citations omitted). Further, the D.C. Court of Appeals affirmed the D.C. District Court's decision. *Jordan*, 2018 WL 5819393, *1. Finally, this Court has also determined the

Powers email is exempt from disclosure pursuant to Exemption 4. *Talley v. U.S. Dep't of Labor*, No. 19-493 (W.D. Mo. July 13, 2020) (Doc. #102).[7]

For all the foregoing reasons, the Court, when construing the underlying facts in the light most favorable to Campo, finds DOJ has established it fully discharged its FOIA obligations. The Court grants DOJ's motion for summary judgment.[8]

### IV. CONCLUSION

For the foregoing reasons, Campo's Motion for Judgment on the Pleadings is denied, and DOJ's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

DATE: July 13, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[7] Because the Court finds the requested records are exempt from production pursuant to Exemptions 7(C), 6, and 4, it is unnecessary for the Court to address DOJ's alternative argument that the Powers email is exempt from production pursuant to Exemption 5.

[8] To the extent the Court did not address arguments raised in Campo's opposition to DOJ's motion for summary judgment, the Court overrules those arguments.